UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

JULIE SLOCUM, on behalf of herself and )
all other similarly situated, )
 )
              Plaintiff, )    No. 2:16-cv-04120-NKL
 )
  vs. )
 )
GERBER PRODUCTS CO. d/b/a NESTLE )
NUTRITION, NESTLE INFANT )
NUTRITION, and NESTLE NUTRITION )
NORTH AMERICA, )
 )
             Defendant.

**ORDER**

Pending before the Court is Plaintiff Julie Slocum's motion to remand, Doc. 14. For the following reasons, Plaintiff's motion is granted.

**I.    Background**

Slocum originally filed this putative class action in the Circuit Court of Pettis County on March 14, 2016. On April 16, 2016, Gerber removed the case to the Western District, contending that the Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 ("CAFA").

This lawsuit involves a claim arising under the Missouri Merchandising Practices Act ("MMPA"). Slocum contends that Gerber falsely and deceptively marketed its Gerber Good Start Gentle line of infant formula products as the "1st and Only" routine formula endorsed by the United States Food and Drug Administration to reduce the risk of developing allergies. In October 2014, the United States Federal Trade Commission

1

filed suit against Gerber to enjoin it from representing to consumers that feeding infants the Good Start Gentle formula would prevent or reduce the risk of infant allergies.

## II. Discussion

CAFA grants subject matter jurisdiction to federal district courts in class actions where (1) any plaintiff has diversity of citizenship from any defendant, (2) the total amount in controversy exceeds $5 million, and (3) the alleged plaintiff class contains at least 100 members. *See* 28 U.S.C. § 1332(d)(2).

When removing a case under CAFA, a defendant must "establish the amount in controversy by a preponderance of the evidence." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944-45 (8th Cir. 2012). *See also* 28 U.S.C. § 1446(c)(2) ("[R]emoval of the action is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified"). Yet this burden is merely "a pleading requirement, not a demand for proof." *Hartis*, 694 F.3d at 945 (*quoting Spivey v. Vertrue, Inc.,* 528 F.3d 982, 986 (7th Cir. 2008)). When a defendant seeks to remove, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).

In a case where the plaintiff challenges the defendant's removal under CAFA, the district court must still determine "by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." *Id*. at 554. "Under the preponderance standard, the jurisdictional fact is not whether damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Bell*

*v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) (internal quotation omitted, emphasis in original). In reaching this outcome, "both sides submit proof" and "the district court must make findings of jurisdictional fact." *Id.*

The defendant has the burden to prove, by a preponderance of the evidence, that federal jurisdiction is appropriate. *See Autoport LLC v. Volkswagen Group of America, Inc.*, 2016 WL 123431, at *2-3 (W.D. Mo. Jan. 11, 2016) (citing *Statin v. Deutsche Bank Nat. Trust Co.*, 599 F. App'x 545, 547 (5th Cir. 2014); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 910-11 (11th Cir. 2014); and *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) to explain that the Supreme Court's decision in *Dart Cherokee* did not shift the burden of proof away from the defendant). *See also McNamee v. Knudsen & Sons, Inc.*, 2016 WL 827942 (E.D. Mo. March 3, 2016) (citing *Autoport* positively); *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 821 (8th Cir. 2010) ("Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction."). Therefore, the dispositive question before the Court is whether Gerber has carried its burden by showing, by a preponderance of the evidence, that the $5 million amount in controversy requirement is satisfied.

When answering this question, a district court should assess the evidence after "both sides submit proof." *Dart Cherokee*, 135 S. Ct. at 554; *Pudlowski v. The St. Louis Rams, LLC*, 2016 WL 3902660, at *1 (8th Cir. July 19, 2016) ("A defendant is not required to submit evidence establishing federal-court jurisdiction with its notice of removal unless the plaintiff or the court questions the defendant's claim of jurisdiction.").

3

This proof may be presented by oral arguments, *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015), or paper briefings and affidavits, *Dudley*, 778 F.3d at 912-13. Under any approach, a district court is not required to order evidentiary submissions. *See Sloan v. Soul Circus, Inc.*, 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015) (citing post-*Dart Cherokee* cases for the proposition that a district court need not request additional briefing from the parties). Rather, the court must merely provide a "fair opportunity" for both sides to submit proof. *Ibarra*, 775 F.3d at 1195. If the court provides that opportunity and one party does not submit any evidence, the Fifth Circuit has found that the court may still evaluate the amount in controversy when the "record is . . . sufficient" to do so. *Statin v. Deutsche Bank Nat. Trust Co.*, 598 F. App'x 322, 323 (5th Cir. 2015).

Both sides had the opportunity to present evidence with their briefing on the motion to remand. In support of the motion, Slocum attached two affidavits, one from herself and one from her attorney. Gerber chose to submit no evidence, instead relying upon the exhibits submitted with its Notice of Removal. The existing record is sufficient for the Court to evaluate the motion before it.

Gerber contends that Slocum's claim is comprised of three components that together indicate that the amount in controversy exceeds $5 million: (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees.

### A. Compensatory Damages

Compensatory damages on an MMPA claim are measured by the benefit of the bargain rule, "which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Plubell v. Merck & Co., Inc.*, 289

4

S.W.3d 707, 715 (Mo. Ct. App. 2009). *See also Faltermeier v. FCA US LLC*, No. 4:15-cv-00491-DGK (W.D. Mo. May 26, 2016); *Torp v. Gen. Motors Acceptance Corp.*, 2007 WL 2811437, at *6 n.9 (W.D. Mo. Sept. 24, 2007); MAI 4.03.

In the Petition, Slocum alleges that "[a]s a result of Defendant's false representations and deceptive marketing practices, Plaintiff and other Missouri consumers did not receive the benefit of their bargain in purchasing Good Start." She contends that Gerber's marketing permitted the company to sell the formula at the premium price of "up to 10.4% more than competing similar powder infant formula products that are also sold by other manufacturers in the State of Missouri at stores such as Walmart, Target, CVS, and Walgreens and which have not been marketed as preventing or reducing the risk of allergies or atopic dermatitis." [Doc. 1-2, p. 19].

Gerber submitted a declaration from Russ Levitan, the Associate Director of Customer Analytics at Gerber, with its Notice of Removal. [Doc. 1-4]. Mr. Levitan stated in the declaration that "such actual and estimated sales [of the formula] were made to more than 100 persons, and that the value of such actual and estimated sales exceeds $5,000,000.00." Slocum contends that the value of the compensatory damages claimed in the lawsuit is thus only $520,000, which is 10.4 percent of the estimated $5 million in sales and far below the requisite jurisdictional threshold of $5 million.

Gerber contends that Slocum's compensatory damages could far exceed $520,000. First, Gerber notes that Mr. Levitan stated that sales of the formula during the relevant time period exceeded $5 million. While the Court recognizes that total sales may have exceeded $5 million, it is Gerber's burden as the defendant to demonstrate that the

5

jurisdictional threshold is satisfied. Moreover, Gerber is the party more likely to be in possession of the data indicating exactly how much formula was sold during the relevant time period. In responding to Slocum's motion to remand, Gerber could have had Mr. Levitan amend or clarify his declaration if the total sales were far in excess of $5 million. As Gerber's declarant stated only that total sales exceeded $5 million, the Court will utilize this base number for analyzing whether the amount in controversy is satisfied.

Gerber further argues that Slocum's current damages theory of a 10.4% price premium is not binding on the putative class. While the Court recognizes that Slocum and the class could later seek damages in excess of the 10.4% price premium, Missouri law on compensatory damages is clear that the appropriate measure of damages for an MMPA claim is determined by the benefit of the bargain rule. Slocum has not alleged that the Good Start formula was harmful to the children ingesting it, or made any other allegation to suggest that the benefit of the bargain rule would afford the putative class a recovery of anywhere near the entire purchase price of the product. *Cf. Faltermeier v. FCA US LLC*, Case No. 4:15-cv-00491-DGK (W.D. Mo. May 26, 2016) (noting that "the Petition alleges the Jeep Vehicles contain a 'lethal' defect posing a 'substantial risk of harm' to their occupants, [so] a jury could find the actual value of each Jeep Vehicles to be almost nothing."). While the parties have not yet presented evidence on damages, Slocum's initial claim that Gerber was able to charge a 10.4% price premium appears reasonable in light of the remainder of the pleadings.

Gerber's only support for the contention that recovery could exceed the amount of a 10.4% price premium is that Slocum cannot bind the putative class by stipulating to

6

limit damages. While the Court acknowledges that a plaintiff is not permitted to limit damages for the putative class, *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348-49 (2013), the Court need not accept a plainly overbroad reading of the Petition to conclude that the amount in controversy is satisfied.[1] *See Ibarra*, 775 F.3d at 1197 ("Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."). Missouri law is clear that the benefit of the bargain rule applies here, and Gerber has presented no evidence or argument to explain how the benefit of the bargain rule could plausibly result in compensatory damages of anywhere near $5 million. Based on the evidence currently before the Court, the amount of compensatory damages in controversy appears to be approximately $520,000.

**B. Punitive Damages**

Punitive damages may be considered along with compensatory damages when determining the amount in controversy. *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992). However, where punitive damages are not sought in the petition, they are legally unrecoverable under Missouri law. *See Hurst v. Nissan North America, Inc.*, 511 Fed. Appx. 584 (8th Cir. 2013); Mo. R. Civ. P. 55.19 ("Where items of special damage are claimed, they shall be specifically stated. In actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such

---

[1] Slocum submitted a stipulation stating that her individual recovery would not exceed $75,000, and the class claims would not exceed $5 million. As Slocum is not permitted to preemptively limit class recovery, this stipulation has no effect and will not be considered when determining the actual amount in controversy.

7

damage sought to be recovered."). In *Hurst v. Nissan North America, Inc.*, the Eighth Circuit explained that when a plaintiff does not adequately plead punitive damages, the damages are unrecoverable at trial and thus cannot be considered in determining CAFA's amount in controversy.[2]

Slocum has not sought punitive damages in the Petition. However, Gerber contends that Slocum could amend the Petition to request punitive damages. As the representative plaintiff may not bind the putative class to limited damage recovery prior to class certification, Gerber argues that punitive damages should be considered when determining the jurisdictional amount.

Gerber's argument fails for a number of reasons. First, the Court is to consider whether it has jurisdiction over an action based on the time of removal. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012) ("'It is axiomatic that the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal.'" (quoting *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011)). At the time this case was removed, Slocum had

---

[2] Gerber claims that *Hurst* is distinguishable from this case because the facts alleged in *Hurst* did not support a claim for punitive damages, whereas Slocum has pleaded facts to support a claim for punitive damages. However, *Hurst* affirmed the district court's conclusion that "because punitive damages were not sought in the state court petition, such damages were legally unrecoverable under Missouri law." Nothing in the *Hurst* opinion suggests that pleading facts relevant to the punitive damages inquiry makes the pleading sufficient, nor does Missouri Court Rule 55.19 suggest that pleading facts relevant to a punitive damages inquiry is sufficient to make a claim for punitive damages if the request for punitive damages is not "specifically stated" and does not "state separately the amount of such damage sought to be recovered." *See Green v. Study*, 286 S.W.3d 236, 243 (Mo. Ct. App. 2009) (noting that where "Respondents did not specifically plead punitive damages in their petition," they had no right to later request that the petition be amended to conform to the evidence).

8

not pleaded that she and the putative class are entitled to punitive damages. Therefore, the Petition as it currently exists precludes Slocum and the putative class from recovering punitive damages. Second, Slocum's decision not to request punitive damages in the Petition does not constitute impermissible binding of the putative class.[3] Slocum does not bind the putative class through her pleading. The class must be certified by the Court before it can be bound by Slocum's litigation. If Gerber believes that Slocum should have requested punitive damages to adequately protect the interests of the class members, this is an argument to be raised at the time of class certification when Slocum's adequacy as a class representative is being considered, not now as the Court is determining whether it has jurisdiction over the action. Finally, the Eighth Circuit noted in *Hurst* that if a plaintiff later seeks to amend the petition to request punitive damages which would result in federal jurisdiction, the defendant may at that point seek removal of the case. *Id.* at 587. If Slocum later amends the Petition to seek punitive damages, Gerber may at that point seek removal based on the enhanced amount in controversy.

In light of the foregoing considerations, punitive damages will not be considered in determining the amount in controversy.

### C. Attorneys' Fees

The final component of Slocum's claim to be considered in determining the amount in controversy is attorneys' fees.

---

[3] The case Gerber cites in support of its contention that Slocum's actions constitute an improper attempt to bind the putative class is *Knowles*, which had already been decided at the time the Eighth Circuit decided *Hurst*. The Eighth Circuit acknowledged *Knowles* in the *Hurst* decision, but still concluded that punitive damages may not be considered in determining the amount in controversy if they have not been requested in the petition.

9

The MMPA permits a court to "award to the prevailing party attorney's fees, based on the amount of time reasonably expended." Mo. Rev. Stat. § 407.025.1. The Court considers the amount of attorneys' fees in determining the amount in controversy. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013) (citing *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 165 (Mo. 2012)).

Slocum's attorney filed an affidavit in which he stipulated that he would not seek, request, or accept an award of attorney's fees that would cause the amount in controversy to exceed $5 million, exclusive of interest and costs. While such stipulations used to be effective to limit the amount in controversy in the Eighth Circuit under *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069 (8th Cir. 2012), it is unclear whether such stipulations are effective following the Eighth Circuit's decision in *CMH Homes, Inc. v. Goodner*, 729 F.3d 832 (8th Cir. 2013). In *Goodner*, the Eighth Circuit noted that "the Supreme Court later made clear that *Rolwing* was wrong, because 'a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.'" *Id.* at 838. However, in both *Rolwing* and *Goodner*, the parties had signed stipulations limiting both the damages recovery for the putative class and attorneys' fees. The Supreme Court ruled in *Knowles* that a class representative cannot preemptively limit damages for the putative class, but did not address whether stipulations limiting attorneys' fees awards were permissible. Thus, it is unclear whether *Rolwing* is still good law is it relates to stipulations limiting fee awards.

10

Case 2:16-cv-04120-NKL    Document 37    Filed 07/25/16    Page 10 of 15

Nevertheless, Gerber cites *Faltermeier v. FCA US LLC*, Case No. 4:15-cv-00491-DGK (W.D. Mo. May 26, 2016), as evidence that *Rolwing* has in fact been overruled as it relates to attorneys' fees stipulations. In *Faltermeier*, the court discussed as follows:

> Although *Knowles* did not consider whether a stipulation limiting the amount of attorneys' fees could preclude removal under CAFA, in the wake of *Knowles* the Eighth Circuit held that "*Rolwing* was wrong," and remanded a case for calculation of the amount in controversy without regard to the damages and attorney's fee stipulations. Consistent with these cases, the Court holds Plaintiff cannot use a stipulation limiting the amount of attorneys' fees to preclude CAFA jurisdiction. Thus, the Court must include in the jurisdictional amount the attorneys' fees that may be awarded.

*Id.* at 7 (citations omitted). Consistent with *Faltermeier*, the Court concludes that the Eighth Circuit's direction in *Goodner* that the district court calculate the amount in controversy "aside from the stipulations" suggests that stipulations limiting attorneys' fees are no longer permissible in the Eighth Circuit. Moreover, this rule better accounts for the realities of litigation and the possibility that at some point in the future new attorneys could be required to adequately represent the class. Such a change could be significantly complicated by a preemptive limitation on the amount of attorneys' fees to be awarded in this case. Thus, the Court will consider the actual amount of attorneys' fees likely to be recovered in this action.

Missouri courts generally consider seven factors in awarding attorneys' fees: "1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the

11

amount involved or the result obtained; and 7) the vigor of the opposition." *Gilliland v. Missouri Athletic Club*, 273 S.W.3d 516, 523 (Mo. 2009). "In determining an amount of attorneys' fees that may be awarded, the court may consider attorneys' fees awarded in similar cases. *See Harris v. TransAmerica Life Ins. Co.*, No. 4:14-CV-186 CEJ, 2014 WL 1316245, at *1 (E.D. Mo. Apr. 2, 2014)." *Faltermeier v. FCA US LLC*, Case No. 4:15-cv-00491-DGK, at *7.

Gerber contends that the risk and complexity of prosecuting class actions, extensive discovery period, likelihood of a multi-week trial, and extensive motion practice in this case indicate that attorneys' fees in this case could be in the millions and potentially cause the amount in controversy to exceed $5 million. However, Gerber provides no specific arguments about how the facts of this case or legal or discovery issues are likely to affect the attorneys' fees incurred.

Instead, Gerber points to *Berry v. Volkswagen Group of America, Inc.*, 397 S.W.3d 425 (Mo. 2013), to support its contention that the attorneys' fees award could be in the millions of dollars. In *Berry*, the Missouri Supreme Court upheld an attorneys' fee award of over $6 million in an MMPA claim against Volkswagen for defective car windows. After five years of litigation and over 7,000 hours spent on the case, it settled with a total payout to the class of just over $125,000.

The issues in *Berry* are distinguishable from those in this case. *Berry* was initially filed in 2005 and the parties did not achieve a settlement until May 2010. Initially, the plaintiff sought to certify a nationwide class. The court declined to certify a nationwide class, instead limiting the class to plaintiffs in Missouri. The class contained

12

approximately 22,000 members, but only 130 class members made valid claims, which dramatically limited the damages Volkswagen was forced to pay.

Gerber has not argued that litigation of this case is likely to last anywhere near five years; rather, the scheduling order currently in force has trial set for November 2017, approximately a year and a half after this action was removed in April 2016. Slocum has not sought to certify a nationwide class. The only evidence about the size of the putative class is contained in Mr. Levitan's declaration, which states that the class exceeds 100 individuals.

In *McNamee v. Knudsen & Sons, Inc.*, the Eastern District of Missouri declined to use *Berry* as the standard for the potential attorneys' fees to be awarded in MMPA litigation:

> Defendant argues that attorneys' fees for the class may exceed $5 million. Defendant puts forward no evidence in support of this assertion, again relying solely on what it considers to be a comparable MMPA case, *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425 (Mo. 2013). In that case, the plaintiff alleged that the defendant's vehicles contained defective window regulators. A class consisting of Missouri owners received approximately $125,000 in compensatory damages and the trial court awarded more than $6 million in attorneys' fees. Defendant argues that, because actual damages in this case exceed those awarded in *Berry*, the class here could likewise receive attorneys' fees in excess of the jurisdictional amount. However, in *Berry*, class counsel expended nearly 8,000 hours on the litigation, which involved disputed class certification, multiple rounds of settlement discussion, trial preparation, and the creation of two plaintiff classes. *Id.* at 428. Defendant has failed to present any evidence to support its contention that this case will present the same level of complexity as Berry and the Court cannot imagine any plausible circumstances in which it would be reasonable to award the millions of dollars in attorneys' fees that would be required to meet the jurisdictional amount. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752

13

> (11th Cir. 2010) ("The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.").

*McNamee*, 2016 WL 827942, at *4. Like the *McNamee* Court, the Court declines to adopt *Berry* as the standard for establishing what attorneys' fees are possible in MMPA claims. If a citation to *Berry* was sufficient to demonstrate the possible attorneys' fees in an MMPA case, all MMPA claims would satisfy the amount in controversy regardless of complexity.[4] *Dart Cherokee* clearly requires a more intensive inquiry to establish the amount in controversy. *Dart Cherokee*, 135 S. Ct. at 554 ("[W]hen a defendant's assertion of the amount in controversy is challenged . . . both cases submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.").

Gerber has not presented any argument based on the specific facts of this case to explain why, under Missouri's seven factor analysis, attorneys' fees are likely to exceed $4,480,000, such that the total amount in controversy with compensatory damages would exceed $5 million. Based on the information before it, the Court concludes that such an award is exceedingly unlikely. As Gerber has failed to demonstrate by a preponderance of the evidence that recovery in this case could exceed $5 million, the Court has no jurisdiction over this matter under CAFA.

---

[4] The only other case cited by Gerber in support of its contention is *Rizzo v. Hendrick Auto Grp. Corp. Inc.*, Case No. 4:08-cv-00137-JTM (W.D. Mo. May 10, 2010). In *Rizzo*, the court approved a $2.7 million award for attorneys' fees and costs in an MMPA action. Even if attorneys' fees in this case amounted to $2.7 million, the total amount in controversy still would not exceed $5 million.

14

## III. Conclusion

For the reasons set forth above, Plaintiff's motion to remand is granted.

/s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: July 25, 2016  
Jefferson City, Missouri